## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| 1. | **STEFANIE L. RUTLEDGE,** | ) | |
| | | ) | |
| | **Plaintiff,** | ) | |
| **v.** | | ) | **CIV-17-** 116-F |
| | | ) | |
| 1. | **KINDERCARE EDUCATION** | ) | |
| | **f/k/a KNOWLEDGE** | ) | |
| | **UNIVERSE EDUCATION** | ) | |
| | **LLC d/b/a KINDERCARE** | ) | |
| | **LEARNING CENTERS LLC,** | ) | |
| | | ) | **JURY TRIAL DEMANDED** |
| | **Defendant.** | ) | **ATTORNEY LIEN CLAIMED** |

### COMPLAINT

**COMES NOW** the Plaintiff, Stefanie L. Rutledge, and for her Complaint against the Defendant alleges and states as follows:

### PARTIES

1.      The Plaintiff is Stefanie L. Rutledge, an adult female residing in Canadian County, Oklahoma.

2.      The Defendant is Kindercare Education f/k/a Knowledge Universe Education, LLC, d/b/a Kindercare Learning Centers, LLC, an entity doing business in Oklahoma County, Oklahoma.

### JURISDICTION AND VENUE

3.      This is a cause of action arising out of Plaintiff's former employment with Defendant and is based on the following claims: (a) disability discrimination and retaliation

in violation of the Americans with Disabilities Act ("ADA") and the ADA Amendments Act ("ADAAA"); (b) interference with and retaliation for Plaintiff's use and/or attempted use of medical leave under the Family Medical Leave Act ("FMLA"); and (c) race discrimination in violation of 42 U.S.C. § 1981.

4.     Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331.

5.     Plaintiff has exhausted her administrative remedies as to the above-listed claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 18, 2016.  Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated November 30, 2016, which she received by mail thereafter.  Plaintiff has timely filed this action within ninety (90) days of receipt of her notice of right to sue.

6.     Defendant is located in Oklahoma County and all acts complained of occurred in or around Oklahoma County.  Oklahoma County is located within the Western District of the United States District Court of Oklahoma.  Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

7.     Plaintiff (who is Black) was hired as a Center Director for Defendant on or about July 14, 2014 at the 9202 N. Rockwell location in Oklahoma City, Oklahoma.  Plaintiff was hired by then-District Manager Chris Lane.

-2-

8.     In or around January 2015, Rona Strothers ( who is White) became District Manager and Plaintiff's immediate supervisor.

9.     Throughout her employment, Plaintiff's job performance was at least satisfactory.

10.     After Strothers became Plaintiff's supervisor, Strothers made offensive comments about the Rockwell location's clientele, who were primarily Black.  For instance, Strothers told Plaintiff to purchase dark faux-leather chairs and cheap dark carpet for the Rockwell center lobby because it would be better for "your people."  Strothers also referred to the Rockwell clientele as "those people." Plaintiff was highly offended by such comments.

11.     In or around November 2015, Plaintiff began missing work on occasion due to an initially unknown medical condition.  Particularly, Plaintiff's face was visibly swollen due to fluid retention.  Plaintiff notified Strothers of the time off work Plaintiff took for the doctor's appointments associated with her condition.

12.     On or about December 7, 2015, Strothers issued Plaintiff a Performance Improvement Plan ("PIP").  Strothers told Plaintiff the PIP was not discipline.  And, Plaintiff had not previously been notified that her performance was lacking.  In fact, Strothers had consistently told Plaintiff that she was performing well.  And, Strothers rarely visited Plaintiff's Center to assess its needs or Plaintiff's performance of the job.

13.     In or around early January 2016, Plaintiff notified Strothers that her doctor believed Plaintiff either had lupus or Sjordgen's Syndrome.

-3-

14.     On or about January 5, 2016, Plaintiff left work to care for her daughter-in-law, who was admitted to the hospital to deliver a baby.  Tragically, the baby did not survive.  Plaintiff notified Strothers of her granddaughter's death and need to care for her daughter-in-law during her recovery.

15.     Despite having knowledge of the reasons for Plaintiff's leave, Plaintiff was not advised of her rights under the FMLA for this absence.  Plaintiff missed approximately one (1) week of work caring for her daughter-in-law.  Moreover, Plaintiff was not notified of her right to use intermittent FMLA for her intermittent absences for doctor's appointments related to her auto-immune disease.

16.     On or about February 15, 2016, Plaintiff told Strothers that her doctor was leaning toward a lupus diagnosis.  The next day, Strothers told Plaintiff that she wanted to interview Plaintiff's staff allegedly due to low engagement scores (parent surveys) which were allegedly low.  Significantly, however, the management subset of the parent surveys at Plaintiff's location were positive.  And, although Strothers indicated such interviews were required, other Centers with low engagement scores were not similarly interviewed.

17.     On or about February 17, 2016, Strothers met with Plaintiff regarding her PIP, stating that Plaintiff's performance numbers were improving.

18.     Then, on or about February 22, 2016, Strothers terminated Plaintiff.  Strothers alleged the reason for termination was that Plaintiff did not meet the performance goals in the PIP and that she had violated company policy by allowing teachers to work off-the-clock

and take Center documents home with them.

19.     Such reasons were false and merely pretext for unlawful discrimination based on Plaintiff's disabilities, need for medical leave, and her race.  Plaintiff was meeting most, if not all, of her performance goals as of February 22, 2016.  And, Strothers had recently told Plaintiff she would send Plaintiff to another "high subsidy" Center in Wichita, KS, for additional training on how to further improve on her performance goals.  However, Plaintiff received no such training.

20.     Moreover, Plaintiff received no training regarding teachers volunteering time or taking documents home with them.  Rather, the training she received was primarily geared toward increasing enrollment of private pay children (as opposed to DHS subsidy enrollment).  In fact, Plaintiff was told at hire that she would rotate between Centers in her area for on-the-job training.  However, she was not provided such training.  Rather, she spent about five (5) weeks at one Center in Midwest City before taking over the Rockwell location.

21.     The Midwest City Center Director (who is White) allowed her teachers to volunteer time and take documents home with them.  For instance, several children at Defendant's Centers are eligible for government-subsidized meals and snacks.  The Centers are required to fill out several forms to be reimbursed, including the child's name and what the child ate each day.  The cook at Midwest City took such forms home with her to complete.

22.     When Plaintiff took over the Rockwell Center, the cook's practice was to take

the meal and snack reimbursement forms home to complete.  The forms did not contain any confidential or financial information related to the children or their families.  Having observed this practice in her training, Plaintiff understood this practice was acceptable.

23.     Due to Plaintiff's medical conditions, Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA") and the ADA Amendments Act ("ADAAA"), in that she was disabled, has a record of disability, and/or was perceived as disabled.  Further, her disability substantially limits and/or limited her in one or more of her major life activities, including but not limited to eating, moving, walking, standing and thinking. Her disability impacts one or more of her internal bodily processes, including but not limited to excretory function, circulatory function, nervous system function, immune system function, musculoskeletal function, and digestive function. However, at all times relevant hereto, she was able to perform the essential functions of her job with or without reasonable accommodations.

24.     Due to her medical condition, Plaintiff requested reasonable accommodations in the form of time off work for doctor's appointments associated with the condition.

25.     As a direct and proximate cause of Defendant's actions, Plaintiff has suffered injuries as described below.

## COUNT I - ADA/ADAAA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

26.     The matters alleged above constitute discrimination and retaliation based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

27.     More specifically, Plaintiff was a qualified individual with a disability, in that, she suffers from physical impairments (i.e., lupus and/or other autoimmune ailments) which substantially limit her ability to perform one or more major life activities as set forth above. Further, Plaintiff's disabilities impact one or more of her internal bodily processes, as shown herein.

28.     Plaintiff was regarded as disabled by Defendant because she had an actual or perceived impairment, that impairment was neither transitory nor minor, and Defendant was aware of and perceived the impairment at the time of Plaintiff's termination.

29.     Despite said impairments, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

30.     Plaintiff was terminated under circumstances giving rise to an inference of discrimination.

31.     Plaintiff is further entitled to relief because she engaged in a protected activity (requesting reasonable accommodation, including but not limited to intermittent medical leave), suffered an adverse action (termination), and a causal connection exists between her requests and the adverse action.

32.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered

lost income, past and future, emotional distress and other non-pecuniary losses.

33.     Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## **COUNT II - FMLA**

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

34.     The matters alleged above constitute interference with and retaliation for Plaintiff's use or attempted use of medical leave in violation of the Family and Medical Leave Act ("FMLA").

35.     Plaintiff was entitled to medical leave because she worked for Defendant, an entity with more than 50 employees within a 75 mile radius of Plaintiff's work site, for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

36.     Plaintiff suffered from a serious health condition (i.e., lupus and/or other autoimmune ailments) requiring continued medical treatment by a health care provider.

37.     Defendant interfered with Plaintiff's rights under the FMLA by failing to notify Plaintiff of her FMLA rights and terminating her while she was still eligible for continuing intermittent FMLA.

38.     Defendant also retaliated against Plaintiff for her use of FMLA-qualifying leave by terminating Plaintiff in close temporal proximity of her use of such leave.

Defendant's actions were taken in response to Plaintiff's exercise of rights under the FMLA.

39.    As set forth herein, Defendant's actions were in willful violation of the law. Defendant was aware of the FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

40.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and is entitled to recover of all damages, including, but not limited to, lost income, past and future, liquidated damages, based on the willfulness of Defendant's violation of the FMLA, attorneys' fees and costs.

## COUNT III - Race

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

41.    The matters alleged above constitute violations of 42 U.S.C. § 1981, in the nature of race-based discrimination.

42.    Plaintiff is entitled to relief under federal law for race discrimination because, as stated herein, Plaintiff is Black; she was qualified for her job; she was terminated from her employment with Defendant; and her job was not eliminated.

43.    As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages.

44.    Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## <u>REQUEST FOR RELIEF</u>

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, liquidated damages, and punitive damages together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 3rd DAY OF JANUARY, 2017.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
LAUREN W. JOHNSTON, OBA #22341
SHANNON C. HAUPT, OBA # 18922
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800       (telephone)
(405) 239-3801       (facsimile)
leonardjb@leonardlaw.net
johnstonlw@leonardlaw.net
haupts@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED